US DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Arkansas
### Fayetteville Division

JUN 2 6 2019

DOUGLAS F. YOUNG, Clerk
By

Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) Case No. __19 cm 77__ |
| Premises located at | ) |
| 1400 E 15th Street Lot 29 | ) |
| Fayetteville, Arkansas 72701 | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location):* **SEE ATTACHMENT "A".** **This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.**

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized):*
**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

■ evidence of a crime;

■ contraband, fruits of crime, or other items illegally possessed;

■ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252A | Possession/Distribution of Child Pornography |

The application is based on these facts:

■ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kevin Sears, Task Force Officer HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June **26th**, 2019

City and state:  Fayetteville, Arkansas

_____
*Judge's signature*

Erin L. Wiedemann, Chief United States Magistrate Judge
*Printed name and title*

WESTERN DIST. ARK.
FILED

JUN 2 6 2019

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

ATTACHMENT C

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

STATE OF ARKANSAS        :
       :
       :     ss. **A F F I D A V I T**
       :
COUNTY OF WASHINGTON

## Affidavit in Support of Application for Search Warrant

I, Kevin Sears, being duly sworn, depose and state as follows:

1.      I am a Task Force Officer (TFO) with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Assistant Special Agent in Charge Office in Fayetteville, Arkansas. I have been so employed with Washington County Sheriff's Office since January, 2007. As part of my daily duties as an HSI TFO, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. This affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2.      This affidavit is being submitted in support of an application for a search warrant for the premises located at **1400 E 15th Street Lot 29,  Fayetteville, Arkansas 72701** the "SUBJECT PREMISES". As such, it does not include all of the information known to me as part

of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

## Statutory Authority

3.     This investigation concerns alleged violations of Title 18, United States Code, Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors, which has been defined in Title 18 U.S.C. 2256, as an individual under 18 years of age.

a.     Under 18 U.S.C. Section 2252(a)(1) (transportation), 2252(a)(2) (receipt and distribution), and 2252(a)(4)(B) and 2252A(a)(5)(B) (possession), it is a federal crime for any person to transport, distribute, receive, and possess child pornography, as that term is defined by federal law.  Further under 18 U.S.C. Section 2253(a)(3), a person who is convicted of an offense under 18 U.S.C. Section 2252 or 2252A, shall forfeit to the United States such person's interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

## Computers and Child Pornography

4.     Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized.  Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies.  The photographs required darkroom facilities and a significant amount of skill in order to develop ad reproduce the images.  As a result, there were definable costs involved with the production of pornographic images.  To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and

required secure storage to prevent exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-base/subscription-based websites to conduct business, allowing them to remain relatively anonymous.

5.      In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that the development of computers has also revolutionized the way in which those who seek out child pornography are able to obtain this material. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by those who seek to obtain access to child pornography in these ways.

6.      Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

7.      The Internet allows any computer to connect to another computer.  By connecting to a host computer, electronic contact can be made to literally millions of computers around the world.  A host computer is one that is attached to a network and serves many users.  Host computers are sometimes operated by commercial Internet Service Providers (ISPs), such as America Online ("AOL") and Microsoft, which allow subscribers to dial a local number and connect to a network which is, in turn, connected to the host systems.  Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks.  In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

8.      The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) websites that offer images of child pornography.  Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by business, universities, and government agencies, to communicate with each other and to distribute child pornography.   These communication links allow contacts around the world as easily as calling next door.  Additionally, these communications can be quick, relatively secure, and as anonymous as desired.  All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet.  Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

9.      The computer's capability to store images in digital form makes it an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to

as a "hard drive") used in home computers has grown tremendously with the last several years. Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

10.     It should be noted that Internet Protocol (IP) numbers are unique identifiers leased to internet customers by their ISP's. Although IP numbers are capable of changing over time, only one (1) unique IP number can be assigned to a given customer's computer at any given time. Logs of these leased IP's (and their assigned customer accounts) are stored by ISP's routinely.

11.     Your Affiant knows from his own experience and the training and experience of other law enforcement officers that Internet computers identify each other by an Internet Protocol or IP address. These IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically identify the account that uses the address to access the Internet.

## BACKGROUND CONCERNING GOOGLE DRIVE

12. "Social networking" or "social network service" is a term used to describe applications or websites which focus on establishing networks or relationships among individual users based on interests or activities. These services typically consist of a personal online representation of an individual, often referred to as a profile, a list of other individuals with which a person has shared

interests and has allowed to view their profile, and a variety of other capabilities, such as the uploading and sharing of images and videos.   Newer capabilities allow access to the social networks via mobile devices such as cellular telephones and the upload of real-time information to an individual's profile.   Most, if not all, of the social networks and photo sharing websites are accessible via the Internet and allow a member to contact other members via electronic mail (e-mail), instant messaging, or comments placed directly to a member's profile.   Normally, information posted by individuals to their own or another individual's profiles are not vetted for accuracy or content.

13. Google Plus (plus.google.com, hereinafter "Google+") is an interactive, online, social networking site founded in 2011 with corporate offices located in Mountain View, California. As of June 2013, Google+ had over 500 million registered members.

14. Membership on Google+ is free to anyone. To create an account, an individual must have a Google account, either a Google email address or Google Apps[1] account. The individual must first login with Google e-mail address and account password. He/She will then provide first and last name, sex, and date of birth. Once this information is submitted three optional steps are provided by Google+: 1) import friends from an existing e-mail account; 2) follow interesting people and pages (i.e. Food & Drink, Lifestyle, Technology); and 3) upload an image to the newly created profile to serve as the account's profile picture and complete basic profile information such as location, employer, and educational institutions. Once these steps are completed or by-passed, the profile page for the new account is available. A "welcome" email from Google will then be sent to the email account provided to Google during the registration process. Content located on

---

[1] Google Apps is a service from Google providing independently customizable versions of several Google products under a custom domain name.

an individual's Google+ profile is determined by the member, with options to include a profile picture, short introduction and other biographical details. A Google+ member can also upload an unlimited number of photos and videos, and manage those images in albums. "Circles" can be created by members that allow them to decide what types of information any person can see within that member's profile. "Circles" are an essential part of Google+. They let members group people together into categories based on relationship type (i.e. Best Friends, Work, Fitness, etc...). "Suggestions" is a feature where names of other possibly familiar Google+ members are provided to potentially add to circles. Google+ members can customize profile information by circles. Once a person is a part of a member's circle, additional information on that member's profile may become visible based on the privacy settings for that particular account.

15. Google+ also allows members to create "communities" that have common interests, but are not necessarily a particular person in their circle. Google+ users can create public or private "communities" and share content and posts with other members within that particular community. A member can create one of four types of communities: 1) Public - which allows everyone to join. Community information and content is viewable by all members and can be indexed by search engines; 2) Public with moderator approval - which requires the moderator of the Community to approve new membership requests, and where the community's content is shared publicly, but limited to who can create content; 3) Private with moderator approval- which allows people to find through a search and request to join, and where membership approval is provided by the moderator and information and content is only viewable by members; and 4) Private – hidden from searches, information and content is only viewable by members, and membership is by invitation only.

16. "Photo-Sharing service" or "Photo-Sharing website" is a service that allows the publishing or transfer of a user's digital photo online, thus enabling the user to share them with

others, publicly and/or privately.  The function is provided through both websites and applications that facilitate the upload and display of images.

17.    Picasa is an image organizer and image viewer for organizing and editing digital photos, plus an integrated photo-sharing website, owned by Google.

## Summary of the Investigation to Date

18.    In April 2019, your Affiant received Cyber Tip Line Report Number 47598173 from the National Center for Missing and Exploited Children (NCMEC) in reference to media files containing what was believed to be child pornography being uploaded to Google.

19.    The information on the suspected media containing child pornography was submitted to the Cyber Tip Line by Google, on March 14, 2019.  The incident information was categorized as being "Apparent Child Pornography" based on "Hash Match" of uploaded files.  These files were viewed and identified by Google representatives on all uploaded images and videos.  A total of 29 uploaded image of suspected child pornography was linked to the report.

20.    Google provided the Cyber Tip Line with the following information of the user being reported:

**Incident Type**: Child Pornography (possession, manufacture, and distribution)
**Incident Time**: March 13, 2019 at 15:56:21 UTC
**Name: Lee Murray**
**Mobile Phone: 1479-305-4747**
**Email Address: LMURR3RD@gmail.com**
**Secondary Email Address: LMURR3rd@live.com**
**IP Address**: 70.178.171.209
**Number of Uploaded Files**: 29

21.     On April 23, 2019, your Affiant viewed the suspect file and notes the following is depicted:

(a)     **File Name: IMG_3012..JPG. MD5 Hash: e0e759e29b5b7eefc85544084473e4b1**

This image depicts what is believed to be an approximate four (4) six (6) year old minor female. The photograph shows only the vagina with an adult hand holding it open for the photograph.

(b)  **File Name:  IMG_3428.JPG MD5 Hash: 1315182a4db38e7bf086d8675fe58b47**
This image depicts what is believed to be an approximately four (4) to six (6) year old minor female. The photograph shows the vagina with an adult hand penetrating the minor's anus with two fingers.

22.     Your Affiant then conducted a Geo-Lookup of the IP address: 70.178.171.209 and found it was located at the Latitude of 36.0992 and the Longitude of 94.1716 with a Region of Arkansas and a City of Fayetteville.

23.     An internet search on the origin of the IP address 70.178.171.209 found it to be issued to the internet service provider COX Communications.  Documents received on or about May 17, 2019, from COX Communications Compliance Center in reference to IP address 70.178.171.209 identified the IP as being assigned to William Murry through an active account number of 5138106-11 with a service location of **1400 E 15th Street Lot 29 in Fayetteville, Arkansas 72701, the SUBJECT PREMISES**.

24.     Your Affiant conducted Department of Homeland Security (DHS) and open source database queries on the SUBJECT PREMISES which indicated, that as of June 18, 2019, William Murry with a date of birth in 1971 currently resides at the residence. The database queries also resulted in locating an Arkansas Driver's License bearing the last four digits 0385 issued to William Murry on December 27, 2017 and expires on December 27, 2021.  The address associated to the Arkansas Driver's License is listed as being **1400 E 15th Street Lot 29 in Fayetteville, Arkansas 72701**. William Murry is currently under probation with an active supervision with

probationer Jodi Tarver. Your Affiant called Jodi and was told he is still showing William Murry resides at 1400 E 15th Street Lot 29 in Fayetteville, AR 72701. Property records indicate William Murry has a 1997 Jeep Grand Cherokee license plate of 844WSA registered to him.

25.   On April 23, 2019, mobile surveillance was conducted on the SUBJECT PREMISES and at approximately 1300 hours. Your Affiant saw a black Toyota Corolla displaying Arkansas vehicle license plate of 536XDO and a blue Dodge Durango displaying Arkansas vehicle license plate of 712 XHN. Both vehicles are currently registered to Shawn Holst.

26.   On June 18, 2019, your Affiant conducted mobile surveillance on the SUBJECT PREMISES. Your Affiant observed the black Toyota Corolla and blue Dodge Durango registered to Shawn Holst previously observed on April 23, 2019.

27.   Holst is currently on probation for Sexual Assault 2nd Degree and two counts of Incest. Washington County, Arkansas Probation and Parole has Holst currently registered to a residence at 1189 N Westend Avenue apt D13 in Fayetteville, AR.

### Conclusion

28.   *Necessity of On-site and Off-site examinations of entire computers or storage media.* Based on my experience and the training and experience of other agents, many of the items sought in this affidavit may be stored electronically. Based on my experience and consultation with computer forensic experts, I know that electronic files can be easily moved from computer or electronic storage medium to another computer or medium. Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location. In addition, based on my experience, I know that searching computerized information for evidence of crime often requires special agents to seize most or all of a computer system's central processing unit (CPU), input/output peripheral devices,

related software, documentation, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

(a) Volume of evidence: Computer storage devices such as hard disks, diskettes, tapes, and laser disks, can store the equivalent of thousands of pages of information. This sorting process can take up to several months to complete, depending on the volume of data stored. Therefore, it would also be impractical to attempt this type of data search on site.

(b) Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

29.     Therefore, authorization is sought in this application to seize the items set forth in attachment "B" that are found on the premises to be searched, in order to examine those items for evidence. If it is determined that data has been seized that does not constitute evidence of the crimes detailed herein, the government will return said data within a reasonable time.

30.     Based on my experience and the training and experience of other agents involved with this investigation, your Affiant knows that individuals involved in the sexual exploitation of

children through child pornography almost always keep copies of their sexual explicit material. Among the reasons copies are maintained is because child pornography is illegal to openly purchase, and the most common method of acquiring it is by trading with other people with similar interests. It is also known that due to the inherent illegality of these sexually explicit materials, they are most often kept in a place considered secure, usually a residence, to avoid detection by law enforcement.

31.     Based on the foregoing information, probable cause exists to believe there is located at **1400 E 15th Street Lot 29 Fayetteville, Arkansas 72701**, the SUBJECT PREMISES, evidence of violations of Title 18, United States Code, Section 2252, et seq. Your Affiant prays upon his honorable court to issue a search warrant for the SUBJECT PREMISES for the items set forth in attachment "B" (which is attached hereto and incorporated herein by reference), that constitute evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Section 2252, et seq.


Kevin Sears Task Force Officer
Homeland Security Investigations


Affidavit subscribed and sworn to before me this _____ 26th _ day of _ June __ 2019


Erin L. Wiedemann
United States Magistrate Judge